## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DAWN L. and MICHAEL L., )
on their own behalf and on behalf of their )
daughter M.L., a minor, )
　　　　　　　　　　　　　　　　　　　 )
　　　　　　　　Plaintiffs, )
　　　　　　　　　　　　　　　　　　　 ) CIVIL ACTION NO. 3:06-19
　　　　v. )
　　　　　　　　　　　　　　　　　　　 ) JUDGE KIM R. GIBSON
GREATER JOHNSTOWN SCHOOL )
DISTRICT, )
　　　　　　　　　　　　　　　　　　　 )
　　　　　　　　Defendant. )

## MEMORANDUM AND ORDER
**BACKGROUND**

This matter is before the Court on Defendant's[1] Motion *in Limine* to Limit Time Frame of Plaintiffs' Title IX Claim and Exclude Evidence of Conduct Not Within the Time Frame, (Document No. 50). Specifically, Defendant requests that the Court "preclude Plaintiffs from basing their Title IX claim on, or recovering damages based on, any acts or omissions of the School District that occurred prior to January of 2005 or after April 4, 2005," and that "any evidence regarding conduct outside this time frame be excluded." *Id.* at 3-4. Plaintiffs respond that their claim for retaliation is still before the Court, and that the "retaliatory conduct occurred in 2006 and thereafter." Document No. 56 p.2. They also state that M.L. is seeking compensatory damages for the harassment she claims to have suffered between January of 2005 and April 4, 2005, and that "the events, including instances of Defendants' conduct outside the time frame, has [sic] effects or consequences from the damage perspective,"

---

[1] Although Plaintiffs persist in including Barbara Parkins in the caption of this action, the caption has not been amended to include her and, as the Court has previously noted, she is not in fact a defendant in this case. Document No. 44 p. 26 n. 6.

1

regardless of the duration of the period of actionable harassment established by the Court's earlier memorandum opinion and order. *Id.* at 2-3; Document No. 44.

The facts of this case are well-known to the Parties and the Court, *see* Document No. 44 pp. 2-18, and need not be repeated at length here. Briefly stated, the L family lives within the Greater Johnstown School District [hereinafter "Defendant" or "the District"] and until the beginning of the 2006-07 school year the L children attended the District's schools. When M.L. was approximately 11 years old she became friends with A.M., who lived nearby and was approximately two years older. In the summer of 2004, A.M. often slept at M.L.'s house; when she did the two girls shared a bed. The girls maintained an apparently friendly relationship during the fall of 2004, when M.L. entered the sixth grade and A.M. the eighth grade, and although the sixth and eighth grade classes were on different floors of the middle school building they would contrive to see each other during the school day.

On January 13, 2005, Dawn L. found sexually suggestive notes from A.M. to M.L. On January 14, 2005, Dawn L. showed the notes to Darren Buchko, the principal of the District's middle school. During the course of this meeting, Buchko and Dawn L. discovered more sexually suggestive notes in M.L.'s locker, and one of M.L's teachers volunteered that on several occasions M.L. had returned to class from the restroom crying, and with a "beet red" face.

Dawn L requested that Buchko keep A.M. away from M.L. He did not do so, and Dawn and Michael L. arranged for M.L. to receive homebound instruction from the last week of January, 2005 until March 14, 2005. Upon M.L.'s return to the middle school, A.M. once again began to pursue her. A.M. was ultimately arrested, suspended from school, and transferred to the school district's Alternative Education Program on April 14, 2005. She remained in that program until the end of the 2005-06 school year. Although the Alternative Education Program was also housed in the middle school

building, its classes met after the regular school day had ended. The last day the two girls attended class at the same time was April 4, 2005.

M.L. and A.M. both played basketball. Due to a no-contact order that had resulted from A.M.'s juvenile court proceeding, A.M. could not participate in either a summer basketball program run by the school or the school team in the fall so long as M.L. was present. Other students became aware of this proscription, allegedly made remarks about it at the first fall practice, and M.L. quit the team.

Dawn and Michael L. had been active members of a sports booster club known as the "Big J" and had generally volunteered within the school district. They allege that they were forced to curtail and, at least in the case of Dawn L., to eventually cease their volunteer activities in retaliation for their complaints. In the fall of 2005 Michael L. was, however, hired to keep score at girls' basketball games at the rate of $25 per game.

In January of 2006 Dawn and Michael L. contacted the news media to discuss what they viewed as the District's lack of response to their complaints regarding A.M.'s alleged sexual harassment of M.L. They filed the instant action on January 27, 2006. The coach who had hired Michael L. to keep score then informed him that the District's superintendent had told the coach that since Michael L and Dawn L. had filed their lawsuit Michael L. was no longer allowed to keep score. At approximately the same time the basketball coach of M.L.'s older sister, N.L., was allegedly asked to "bench" N.L. At the beginning of the 2006-2007 school year, the L family removed all of their school-age children to a local Catholic school.

Plaintiffs' original complaint contained claims under Title IX for sexual harassment of M.L. between January and April of 2005, and during the summer and fall basketball leagues in 2005. It also

3

alleged retaliation in violation of both Title IX and the First Amendment[2] directed against Dawn L., Michael L. and N.L. Defendant moved for summary judgment, (Document No. 27), and the Court granted partial summary judgment on the Title IX harassment claim for the summer and fall basketball leagues; on all Plaintiffs' § 1983 retaliation claims; and on N.L.'s Title IX retaliation claim as well. Document No. 44 p. 29. The Court denied summary judgment on M.L.'s claim for harassment, limited to the period from January of 2005 until April 14, 2005, as well as Dawn and Michael L.'s Title IX retaliation claims. The Court will consider Defendant's motion *in limine* as it applies to each of the surviving claims in turn.

## DISCUSSION

### Harassment

For Plaintiffs to prevail on their claim for student-on-student sexual harassment under Title IX they must establish by a preponderance of the evidence that (1) Defendant "had 'actual knowledge' of the sexual harassment"; (2) that Defendant "acted with 'deliberate indifference' to the known acts of harassment"; and (3) that Defendant's "deliberate indifference to known acts of sexual harassment cause[d] [M.L.] to suffer injury." *Richard P. ex rel. R.P. v. Sch. Dist. of City of Erie, Pa.*, C.A. No. 03-390 Erie, 2006 WL 2847412, at *3, 2008 U.S. Dist. LEXIS 75068, at *8 (W.D. Pa. Sept. 30, 2006) (citing *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1991)). Liability obtains only under "circumstances wherein [Defendant] exercises substantial control over both the harasser and the context in which the known harassment occurs." *Davis*, 526 U.S. at 650, 119 S.Ct. at 1675, 143 L.Ed.2d 858.

Defendant's knowledge must first be "actual"; the Supreme Court has specifically rejected a

---

[2] Plaintiffs argued that their First Amendment claims were cognizable under 42 U.S.C. § 1983.

4

"*should have* known" standard. *Davis*, 526 U.S. at 642, 119 S.Ct. at 1671, 143 L.Ed.2d at 853 (emphasis in original). Actual knowledge exists where the "educational institution . . . knows the underlying facts, indicating sufficiently substantial danger to students, and was therefore aware of the danger." *Bostic v. Smyrna Sch. Dist.*, 418 F.3d 355, 361 (3d Cir. 2005) (quoting 3C Fed. Jury Prac. & Instr. § 117.36 (5th ed. 2001)). For there to be actual knowledge, notice of the danger must have been given to an "appropriate person," 20 U.S.C. § 1682, who, "at minimum, [is] an official of the recipient entity with authority to take corrective action to end the discrimination." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290, 118 S.Ct. 1989, 1999, 141 L.Ed.2d 277, 292 (1998). A school principal "who is entrusted with the responsibility and authority normally associated with that position will ordinarily be 'an appropriate person.'" *Warren ex rel. Good v. Reading Sch. Dist.*, 278 F.3d 163, 171 & n.3 (3d Cir. 2002).

To establish deliberate indifference, Plaintiff must show that Defendant's response to Plaintiff's actual notice was "clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648-49, 119 S.Ct. at 1674, 143 L.Ed.2d at 857. If student-on-student sexual harassment arises as a result of Defendant's deliberate indifference, it is only actionable under Title IX if the harassment is "so severe, pervasive, and objectively offensive, and . . . so undermines and detracts from the victims' educational experience, that the victim-students are effectively denied equal access to an institution's resources and opportunities." *Davis*, 526 U.S. at 651, 119 S.Ct. at 1675, 143 L.Ed.2d at 859 (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). Plaintiff need not, however, "show physical exclusion." *Id.*

Since neither Dawn nor Michael L. were aware of any potentially harassing behavior prior to January 13, 2005; since Dawn L. did not notify Principal Buchko of the behavior until January 14, 2005;

5

and since there is no evidence that Buchko or any other official of the school district with sufficient authority had actual notice from any other source that M.L. was being harassed by A.M., Plaintiffs can state no Title IX harassment claim before January 14, 2005. The Court will nonetheless allow evidence regarding the relationship and behavior of M.L. and A.M. prior to that time for the purpose of establishing background and context, since "[w]hether gender-oriented conduct rises to the level of actionable 'harassment' . . . 'depends on a constellation of surrounding circumstances, expectations, and relationships . . . .'" *Davis*, 526 U.S. at 651, 119 S.Ct. at 1675, 143 L.Ed.2d at 859 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)). Moreover, statements such as the one by one of M.L.'s teachers to Buchko on January 14, 2005, that she had previously observed M.L. "return to the class from the bathroom several times in tears and her face beet red" are clearly relevant to Buchko's awareness of substantial danger to M.L., even though they may refer to incidents prior to January of 2005.

Since Plaintiffs seek damages for denial of educational resources and opportunities,[3] evidence regarding M.L.'s use of those resources and opportunities that predates the alleged harassment would be relevant in establishing a pre-harassment baseline with which to contrast ML.'s behavior and achievement during and after the period of alleged harassment.[4] In addition, since the injury resulting from any denial of educational resources and opportunities could continue even after the harassment ended with, for example, the student struggling, perhaps unsuccessfully, to catch up academically with her classmates, evidence of post-harassment performance could be relevant to the question of damages

---

[3] Should Plaintiffs seek broader damages under this cause of action the Court will hear argument on the issue.

[4] To the extent that the harassment started before Buchko was notified, Defendant would not, however be liable for any resulting denial of educational resources and opportunities that occurred before January 14, 2005 at the earliest.

6

as well.

The Court has already determined that Plaintiff did not suffer any injury cognizable under Title IX in relation to the 2005 basketball practices and functions. Evidence regarding those practices and functions which is offered in relation to M.L.'s Title IX harassment claim is therefore irrelevant and hence inadmissible.

**Retaliation**

In allowing claims for retaliation under Title IX, the Supreme Court has nonetheless neglected to provide a scheme by which they may be analyzed. *Burch v. Regents of Univ. of Cal.*, 433 F.Supp.2d 1110, 1125 (E.D. Cal. 2006) (citing *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 125 S.Ct. 1497, 1504, 1506, 161 L.Ed.2d 361 (2005)). The Supreme Court has, however, "looked to its Title VII interpretations . . . in illuminating Title IX . . . ." *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 616 n.1, 119 S.Ct. 2176, 2195 n.1, 144 L.Ed.2d 540, 568 n.1 (1999) (citing *Franklin v Gwinnett County Pub. Sch.*, 503 U.S. 60, 75, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1986) (relying on *Meritor*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49) (Thomas, J., dissenting). Under the well-developed jurisprudence of Title VII, a prima facie case of retaliation requires a showing that (1) the Plaintiff "engaged in a protected activity"; (2) he experienced a "materially adverse" action either after or contemporaneously with the protected activity; and (3) there was a causal link between the protected activity and the adverse action. *See Weston v. Pennsylvania*, 251 F.3d 420, 430 (3d Cir. 2001) (citations omitted). Making a complaint regarding a violation of Title IX is a protected activity. *See Jackson*, 544 U.S. at 180-81, 125 S.Ct. at 1508, 161 L.Ed.2d at 375. A materially adverse action is one which "well might have dissuaded a reasonable [person] from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 2415, 165 L.Ed.2d 345, 359 (2006) (citations and

7

internal quotation marks omitted).

If Plaintiffs have satisfied the elements of the prima facie case, the analyses then diverge depending upon the type of evidence available to show retaliation. If there is direct evidence, Defendant must demonstrate by a preponderance of the evidence "that it would have reached the same decision" absent Plaintiff's protected act. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 261, 109 S.Ct. 1775, 1796, 104 L.Ed.2d 268, 295 (1989) (O'Connor, J., concurring); *see also Monaco v. Am. Gen'l Assur. Co.*, 359 F.3d 296, 300 & n.5 (3d Cir. 2004) (citations omitted) (noting that the Third Circuit regards Justice O'Connor's concurrence in *Price Waterhouse* as controlling); *Lackman v. Recovery Servs. of N.J., Inc.*, Civil Action No. 06-2016 (RMB), 2008 WL 583660, at *6 n.4, 2008 U.S. Dist. LEXIS, at *16 n.4 (D.N.J. Feb. 13, 2008) (noting that although *Price Waterhouse* has been overruled by Congressional action in the context of Title VII, "courts continue to use the . . . analysis in . . . non-title VII discrimination cases"); *Hicks v. Tech Indus.*, 512 F.Supp.2d 338, 357 (W.D. Pa. 2007) (applying the "Title VII framework" to a case under the Family and Medical Leave Act and finding *Price Waterhouse* applicable in cases involving direct proof of retaliation). If, however, there is only circumstantial evidence of retaliation, Defendant's burden becomes merely one of production of a "legitimate, nondiscriminatory reason" for its actions. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668, 678 (1973); *Hicks*, 512 F.Supp.2d. at 357. If Defendant meets its burden, Plaintiffs must then show by a preponderance of the evidence that Defendant's stated reason "was in fact pretext." *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825, 36 L.Ed.2d at 679.

The Court notes as an initial matter that Plaintiffs have not suggested that Defendant had taken any retaliatory actions against either Dawn or Michael L. as of April 4, 2005. To grant Defendant's motion *in limine* would therefore effectively dismiss Plaintiffs' claim of retaliation. However much

8

Defendant might wish otherwise, that claim has survived Defendant's motion for summary judgment and Plaintiffs will be permitted to present "a broad array of evidence" in support thereof. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281, 284 (3d Cir. 2000); *cf. Andrews v. City of Philadelphia*, 895 F.2d 1469, 1471, 1484 (3d Cir. 1990) (holding, in a Title VII hostile work environment case, that "[a] play cannot be understood on the basis of some of its scenes but only on its entire performance, and similarly, a discrimination analysis must concentrate not on individual incidents, but on the overall scenario").

Some of the evidentiary issues surrounding Plaintiffs' retaliation claim are straightforward. Pursuant to the Court's earlier decision of Defendant's motions for summary judgment, evidence which is only relevant to Plaintiffs' dismissed First Amendment claims is inadmissible; if Plaintiffs nonetheless wish to claim retaliation for their statements to the news media, they will first have to establish that making those statements was protected activity under Title IX. By contrast, since Plaintiffs claim a dramatic change in their relationship with Defendant after their protected activities, evidence of the nature and quality of that relationship before the protected activities, and hence before January of 2005, is highly relevant. *See LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007).

Plaintiffs' claim of constructive removal of the L. family from the Defendant school district due to a pattern of retaliatory harassment presents greater challenges, beginning with the cause of action itself. So far as the Court can determine, there is no case in the federal system that has considered what amounts to a claim for constructive expulsion and although the claim seems plausible on its face the Court will need to hear argument on the matter before determining its viability. If the Court ultimately does allow Plaintiffs to proceed under this theory, the gravamen of the claim would be a showing that

9

conditions within the District had become "so intolerable [to the L. family] that a reasonable person would have felt compelled to resign" from the District. *Pennsylvania State Police v. Suders*, 542 U.S. 129, 146-47, 124 S.Ct. 2342, 2345, 159 L.Ed.2d 204, 220 (2004) (establishing the above-stated standard for a "hostile-environment constructive-discharge claim"). Evidence of Defendant's treatment of every member of the L. family, regardless of their status as Plaintiffs in the instant suit, would therefore be relevant to show the impacts of that treatment on the family as a whole. Notably, evidence of N.L.'s "benching," to the extent that it was done in retaliation for her parents' protected activities under Title IX, would be relevant to this cause of action even though N.L.'s own claim was dismissed due to her lack of party status.

The relevant period of inquiry must extend from well before January of 2005 until the L. family's "resignation" from the district became effective. Absent evidence to the contrary, the Court will assume that the effective date for the resignation was the first day of the 2006-2007 school year. Irrespective of the precise dates involved, only evidence of retaliation related to Dawn and Michael L.'s protected activities is relevant. The Court has been unable to find a case in the federal system that so much as suggests that retaliation for a decision to leave a school district is actionable under Title IX, regardless of the motive for departure, and therefore evidence that supports only a claim for retaliation based on a decision to withdraw is irrelevant and hence inadmissible in the instant action.

## CONCLUSION

The evidence in the case at bar cannot be limited to the period from January of 2005 through April 4, 2005. Evidence outside that time frame may, however, be admissible only for limited purposes, as described above. An appropriate order follows.

10

## ORDER

**AND NOW**, this 2nd day of July, 2008, the Court having considered Defendant's Motion *in Limine* to Limit Time Frame of Plaintiffs' Title IX Claim and Exclude Evidence of Conduct Not Within the Time Frame, (Document No. 50), it is **HEREBY ORDERED** that for the foregoing reasons the motion is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** as follows:

1. With regard to Plaintiffs' sexual harassment claim, evidence of conduct before January 14, 2005 is admissible to provide background and context for the relationship between M.L. and A.M. It is also admissible for the purpose of establishing a pre-harassment baseline for M.L.'s general behavior and academic achievement. The contents of reports made to Principal Buchko or other appropriate persons employed by Defendant, made on or after January 14, 2005, are admissible for the purpose of establishing Defendant's actual knowledge of the harassment even if they refer to conduct that occurred before January of 2005.

2. With regard to Plaintiffs' sexual harassment claim, evidence of conduct after April 14, 2008 is not admissible to show sexual harassment after that date. However, evidence of conduct after April 14, 2008 is admissible for the purpose of establishing damages resulting from the period of harassment that extended from January 14, 2008 until April 14, 2008.

3. With regard to Plaintiffs' retaliation claims, only evidence of retaliation for actions by

11

Dawn and Michael L. which were protected under Title IX is admissible.

4. With regard to Plaintiffs' retaliation claims, evidence of the relationship between the entire L. family and Defendant is, pending the Court's decision on Plaintiffs' claim for constructive expulsion, admissible from the time of the family's initial involvement with the District until the first day of the 2006-2007 school year, regardless of any particular family member's status as a party to the instant action. Evidence of the relationship between Dawn and Michael L. and Defendant is admissible in any case from the time of their initial involvement with the District until the first day of the 2006-2007 school year.

5. With regard to Plaintiffs' retaliation claims, evidence that only supports a claim of retaliation for Plaintiffs' exercise of their rights under the First Amendment or for Dawn and Michael L.'s decision to transfer their children to another school is not admissible.

BY THE COURT:

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE